IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

INSTITUTO DE EDUCACION
UNIVERSAL, INC.,

    Plaintiff,

    v.

UNITED STATES DEPARTMENT OF
EDUCATION AND THE HONORABLE
SECRETARY OF EDUCATION RICHARD
RILEY,

    Defendants.

CIVIL NO. 98-2225 (RLA)

## ORDER GRANTING SUMMARY JUDGMENT
## FOR THE DEPARTMENT OF EDUCATION

These proceedings are based on Plaintiff INSTITUTO DE EDUCACION UNIVERSAL's (IEU) challenge to certain actions taken by Defendants, the U.S. Department of Education (USDE or EDUCATION), and the Secretary of Education (SECRETARY), to obtain reimbursement for federal funds allegedly received erroneously by Plaintiff in conflict with the requirements of the Higher Education Act of 1965, as amended, 20 U.S.C. §1070 et seq., (Title IV, HEA programs).  The parties filed cross-motions for summary judgment, acknowledging that there are no disputed facts sufficient to give rise to a contested proceeding.  Following a review of the administrative record created pursuant to the agency's process, and the arguments set forth by the parties, the Court hereby GRANTS summary judgment to USDE.

CIVIL NO. 98-2225 (RLA)                                              Page 2

---

## STANDARD FOR REVIEW

        Plaintiff, a private post-secondary higher education institution
that was eligible to participate in the Higher Education Act Title
III and IV programs administered by the USDE, filed its Complaint to
effectuate a remand from the First Circuit Court of Appeals to obtain
judicial review of a final agency action pursuant to the
Administrative Procedure Act, 5 U.S.C. §551 et seq. (APA). As a
result, judicial review in this case consists of a review of the
administrative record. Florida Power & Light Co. v. Lorion, 470 U.S.
729, 744 (1985). Although Plaintiff suggests that a de novo review
may be appropriate here, it wholly fails to demonstrate the
exceptional circumstances that could justify deviation from the well-
established standard requiring a record review of administrative
decisions. Town of Norfolk v. U.S. Army Corps of Engineers, 968 F.2d
1438, 1458-59 (1st Cir. 1992). ("Courts require a strong showing of
bad faith or improper behavior before ordering the supplementation of
the administrative record.")

        In addition, pursuant to the APA, a reviewing court evaluates
the propriety of an administrative action to determine if it is
"arbitrary, capricious, an abuse of discretion, or otherwise not in
accordance with law...". 5 U.S.C. §706(2). It is well settled that
such an inquiry is ultimately narrow and limited to "whether the
decision was based on a consideration of the relevant factors and
whether there has been a clear error of judgment." Citizens to

CIVIL NO. 98-2225 (RLA)                                    **Page 3**

Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971). Indeed, "(t)he Court is not empowered to substitute its judgment for that of the agency." Id.; and, in fact, "judicial review of administrative actions should be highly deferential to the agency." Organized Fishermen of Florida v. Hodel, 775 F.2d 1544, 1550 (11th Cir. 1985). Moreover, when conflicting views are expressed, "an agency must have discretion to rely on the reasonable opinions of its own qualified experts, even if, as an original matter, a court might find contrary views more persuasive." Marsh v. Oregon Natural Resources Council, 490 U.S. 360, 378 (1979).

### Summary Judgment Standards

As set forth by Rule 56(c), Fed. R. Civ. P., summary judgment is appropriate where the record shows no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The First Circuit Court of Appeals has stated that the function of summary judgment is "to pierce the boilerplate of the pleadings and examine the parties' proof to determine whether a trial is actually necessary." Vega-Rodriguez v. Puerto Rico Telephone Co., 110 F.3d 174, 178 (1st Cir. 1997). "To defeat a motion for summary judgment, the nonmoving party must demonstrate the existence of a trialworthy issue as to some material fact." Cortes Irizarry v. Corporación Insular, 111 F.3d 184, 187 (1st Cir. 1997). Furthermore, "[a] genuine issue of fact exists only if a reasonable jury could resolve it in favor of either party." Basic Controlex Corp. v. Klockner Moeller

CIVIL NO. 98-2225 (RLA)                                          **Page 4**

Corp., 202 F.3d 450, 453 (1st Cir. 2000).  At this stage of the proceedings, both parties have acknowledged that summary judgment is the appropriate disposition of the matter given their pending cross-motions.

Having reviewed the parties' proposed findings of fact, as well as the administrative record, and based on the applicable law, the Court finds that summary judgment in favor of USDE is warranted.

### THE FACTS[1]

1)  To monitor a school's compliance with Title IV requirements, the USDE conducts program reviews through its Office of Student Financial Assistance Programs (SFAP) and audits through its Office of Inspector General (OIG).

2)  Following the conduct of program reviews and audits, a program review report or a draft audit report is issued.

3)  Liabilities are assessed by the USDE in documents called final program review determinations (FPRD) and final audit determinations (FAD).

4)  In addition to assessing liabilities, the USDE may impose fines for any Title IV programmatic violation and may seek to terminate an institution's Title IV eligibility.

---

[1] To the extent that proposed facts from either party are not adopted, they are rejected as either unsupported by the record, or as containing superfluous opinion or argument that is extraneous to the issue raised. See Ruiz v. Caribbean Restaurants, Inc., 54 F. Supp.2d 2d 97, 102 (D. Puerto Rico 1999).

**CIVIL NO. 98-2225 (RLA)** **Page 5**

5) An institution receives an administrative hearing before an USDE hearing official to contest any determinations and sanctions.

6) The hearing official's decision is appealable to the Secretary.

7) In May of 1994, USDE's OIG initiated an audit to examine Plaintiff's administration of the Title IV programs during 1991-92, 1992-93, and 1993-94.

8) A final audit report was issued on September 25, 1995.

9) The audit report found that Plaintiff violated Title IV requirements by: (1) overstating its clock hours of instruction and thereby improperly overawarding Pell Grant funds to its students (clock hour finding); and (2) requesting more Title IV funds than needed for disbursement to its students within three days of its receipt of the funds (excess cash finding).

10) For purposes of calculating its Pell Grant awards, the audit found that Plaintiff overstated the hours in its day class program by 220 hours (1440 instead of 1200) and in its night class program by 200 hours (1200 instead of 1000).

11) Plaintiff received $3,854,700 in additional Pell Grant funds as a result of the manner in which it computed its

CIVIL NO. 98-2225 (RLA)                                               **Page 6**

clock hours of instruction during the three-year audited period.

12) The audit found that by violating the requirement to disburse funds within the required three days of its receipt of these funds, Plaintiff retained surplus funds of $542,947 at the conclusion of the audited period, and owed Education $213,917 in imputed interest for its ongoing excess cash balances.

13) On June 28, 1996, SFAP issued a Final Audit Determination (FAD) based on the OIG final audit report covering the 1991-92, 1992-93, and 1993-94 award years.

14) The FAD assessed a liability against Plaintiff of $756,864 for the excess cash finding, and $1,284,900 against Plaintiff for the clock hour finding for 1993-94.

15) Plaintiff appealed the FAD on August 12, 1996.

16) From April 18-22, 1995, USDE conducted a program review to examine Plaintiff's administration of its Title IV funds for its 1992-93, 1993-94, and 1994-95 award years.

17) A program review report was issued on October 26, 1995 that found that Plaintiff failed to make timely Pell Grant refunds during all three award years, and failed to make Pell Grant refunds during 1994-95 (refund finding).

18) On June 3, 1996, SFAP issued a Final Program Review Determination (FPRD) that assessed liabilities for the

CIVIL NO. 98-2225 (RLA)                                            **Page 7**

refund finding in the amount of $720,386, to include $655,554 for Plaintiff's failure to make 512 refunds during 1994-95.

19) On July 17, 1996, Plaintiff appealed the FPRD.

20) On March 12, 1996, USDE notified Plaintiff of its intent to terminate the school's eligibility to participate in the Title IV programs, and to fine it $275,000 for the programmatic violations identified in the program review report and audit.

21) Plaintiff appealed the termination and fine actions on April 1, 1996.

22) The USDE's hearing official consolidated all three administrative actions involving Plaintiff.

23) An administrative hearing was held in San Juan, Puerto Rico in October 1996.

24) The hearing official issued his decision on January 24, 1997.

25) The hearing official affirmed the excess cash finding and the refund finding and assessed the associated liabilities. He reversed the clock hour finding in part, and reduced the amount of the fine to $150,000. The hearing official terminated Plaintiff's Title IV eligibility.

26) Both parties appealed the hearing official's decision to the Secretary.

CIVIL NO. 98-2225 (RLA)                                    **Page 8**

27)  In the final agency action, issued on October 28, 1997, the Secretary affirmed the hearing official's excess cash and refund findings, but reversed the hearing official's clock-hour finding, reinstating the full liabilities.  The Secretary sustained the amount of the fine, but reversed Plaintiff's Title IV eligibility termination.

28)  The Office of Student Financial Assistance (SFAP) filed a motion for reconsideration that was denied on January 9, 1998.

29)  As a result of the administrative process, Plaintiff was assessed a total of $2,875,879 in liabilities and fines that it challenged in this case.  ($1,284,900 (clock hour finding) + $756,864 (excess cash finding) + $684,115 (refund finding) + $150,000 (fine) = $2,875,879.)

### The Clock Hour Finding

The USDE's Pell Grant program assists low and middle income students with the cost of their educational instruction.  The USDE administers the program to provide grants to qualified undergraduate students.  20 U.S.C. §1070a(b).

The USDE's regulations require that Pell Grant funds be disbursed to students in accordance with established payment periods. 34 C.F.R. §690.75 (1993-95).  For each payment period, an institution may pay Pell Grant funds only to eligible students who have completed the requisite number of clock hours or credit hours of instruction.

34 C.F.R. §690.75(a)(3) (1993-95). Plaintiff measures its instruction in clock hours. A student completing more clock hours is either entitled to a larger Pell Grant award or is entitled to the award at an earlier time. See 34 C.F.R. §§690.63(c)(1993), 690.63(a)(4)(ii), (e) (1994-95), 690.75(a)(3)(i) (1993-95). Accordingly, an accurate calculation of the number of clock hours is relevant to determining the total amount of a student's Pell Grant.

During the 1993-94 award year, the USDE amended its regulatory definition of the term "clock hour" to mean:

> A period of time consisting of – (1) A 50- to 60-minute class, Lecture, or recitation *in a 60-minute period*; (2) A 50- to 60-minute faculty-supervised laboratory, shop training, or internship *in a 60-minute period*.

34 C.F.R. §600.2 (1994) (*emphasis added*).

In adopting this language, the Secretary stated that "[t]he revised definition of a clock hour requires that each clock hour of instruction take place in a discrete 60-minute period." 58 Fed. Reg. 36918, 36919 (July 23, 1993). Prior to the 1993-94 award year, a "clock hour" was defined as a "period of time consisting of … a 50- to 60- minute class, lecture, or recitation." 34 C.F.R. §600.2(1993). As a result, some schools, including Plaintiff, determined the number of clock hours in their programs of instruction by aggregating the number of minutes of instruction and dividing the number by fifty (50). To avoid this continued practice, and the concomitant inflation in the amount of Pell Grant awards, the

Secretary adopted the above-stated change so that the aggregated minutes would have to be divided by sixty (60).

The USDE upheld the application of this regulatory definition to Plaintiff's practices pursuant to its administrative process.  In the final agency action, the Secretary expressly stated:

> I am very concerned about institutions calculating clock hours in a manner inconsistent with the regulation with the purpose of receiving funding prematurely for instructional hours that are not actually earned. Institutions must carefully and closely adhere to the method of calculation reiterated in this decision. (Administrative Record (A.R.) at 1880.)

As a result, USDE assessed $1,284,900 in liabilities against Plaintiff for this regulatory violation.

As previously noted, the USDE is entitled to deference in the review of its agency action, with the administrative decision being set aside only if it is found to be arbitrary and capricious, an abuse of discretion, or contrary to law.  Citizens Awareness Network v. Nuclear Com'n, 59 F.3d 284, 290 (1st Cir. 1995); see also Chevron USA Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984).  "This deference is especially marked in technical or scientific matters within the agency's area of expertise." Citizens Awareness Network, supra, 59 F.3d at 290.  Moreover, an agency's interpretation of its own regulations is of controlling weight unless it is plainly erroneous or inconsistent with the regulation. Robertson v. Methow Valley Citizens Council, 490 U.S. 332, 359 (1989); U.S. v. Haggar Apparel Co., 526 U.S. 380, 392 (1999).

CIVIL NO. 98-2225 (RLA)                                    **Page 11**

Here, the regulatory language is unambiguous, and it was enforced in a manner that is consistent with this language. There is no basis to find Education's behavior to have been arbitrary and capricious.

Plaintiff's complaint challenged USDE's clock hour finding in three principal ways, none of which serve to defeat USDE's Motion for Summary Judgment. First, Plaintiff argued that the hearing process it received was deficient, alleging that USDE failed to consider or make available certain potential impeachment evidence, and did not call a particular witness. (Plaintiff's First and Second Cause of Action; Compliant ¶¶44-55.) In its argument, Plaintiff focused on conflicts that may have existed between the two OIG agents who participated in the OIG audit. However, even assuming *arguendo* that these potential witnesses had conflicting opinions on the enforceability of the audit finding, USDE's decision is exclusively a legal determination based on the propriety of Plaintiff's method of calculating clock hours. The only issue before the hearing official and the Secretary was whether the method of calculation Plaintiff used was permissible under the regulations. They both concluded on behalf of USDE that it was not. There is no basis to find that such a decision was arbitrary and capricious.[2]

_____

[2] The administrative record is replete with Plaintiff's acknowledgment of its clock hour calculation methodology: Plaintiff totaled the number of minutes of instruction time available during the day and divided that by 50 minutes, rather than by the 60 minutes required. See, e.g. A.R. at 564 (Plaintiff's Pre-hearing Brief, "(Plaintiff) takes the total amount of instructional time and divides it by fifty (50) minutes to compute clock

CIVIL NO. 98-2225 (RLA)                                          Page 12

Moreover, there is no evidence to suggest that USDE violated its regulations governing its administrative process through the method in which evidence was received and witnesses were called. Administrative tribunals necessarily have discretion to limit the evidence admitted and the witness testimony received. <u>See</u>, <u>e.g.</u>, <u>Davis v. Office of Personnel Management</u>, 918 F.2d 944 (Fed. Cir. 1990). Nothing in the record suggests that the hearing official did anything other than appropriately manage the case before him.

Second, Plaintiff alleged that the USDE's clock hour regulation conflicts with a separate statutory provision. (Plaintiff's Fourth Cause of Action, Complaint at ¶¶66-67, 69-70.) The statute in question precludes the Secretary from exercising "discretion, supervision or control over the curriculum" of an institution. 20 U.S.C. §3403(b). However, Plaintiff's argument is without merit. By defining a "clock hour" for purposes of measuring Pell Grant eligibility, the Secretary did nothing to restrict or control Plaintiff's curriculum. Rather, the Secretary merely established a

hours."); 616 (Plaintiff's Response to the OIG Draft Audit, "The correct application ... should be to divide the 300 minutes of instruction by 50 minutes each."); 754 (Plaintiff's Response to the OIG Final Audit, "The Institute calculated its clock hours for its day program by taking the total amount of instructional time, 300 minutes (6 classes x 50 minutes) and dividing that total by 50 for a total of six clock hours. ... (Plaintiff) used the same methodology to compute its clock hours for its evening schedule to arrive at 5 clock hours."); 1729 (Plaintiff's Post-hearing Brief, "In determining the appropriate amount of Pell Grants to be awarded to its students, (Plaintiff) divides the total number of instructional minutes by 50 to arrive at the number of clock hours in its programs.")

CIVIL NO. 98-2225 (RLA)                                                    **Page 13**

standard for determining the amount of Pell Grant funding that a student may receive who is enrolled in an eligible program.

Third, Plaintiff alleged that USDE's decision conflicts with previous administrative case law. (Plaintiff's Fourth Cause of Action, Complaint at ¶¶72-79.)  However, this argument is baseless since the case law Plaintiff cited predates the regulatory change at issue here, and thus had no precedential effect on the agency's action against Plaintiff.  There is nothing arbitrary and capricious about enforcing *new* regulatory language prospectively, in a manner that differs from the way in which *different* language was previously enforced.

Finally, in its Motion for Summary Judgment, Plaintiff stated that USDE's "clock hour" regulation was not adopted until July 23, 1993, with an effective date of September 7, 1993, as part of a larger regulatory package.  Thus, Plaintiff claimed that enforcing the regulation against Plaintiff for the 1993-94 award year (which ran from July 1, 1993 to June 30, 1994) constituted prohibited retroactive enforcement.  Again, this contention is without merit.

The USDE did not engage in retroactive enforcement.  The regulation in question did not adopt a new policy or change existing policy, but rather clarified it.  Within the preamble to the regulation the Secretary stated, "The Secretary is revising the definition of the terms "clock hour" … and "eligible program" to eliminate perceived ambiguities in those definitions, notwithstanding the fact that the Secretary believes that the current definitions are

CIVIL NO. 98-2225 (RLA)                                    Page 14

not ambiguous."    58 Fed. Reg. 39619 (July 23, 1993).[3]    Thus, regardless of the effective date identified for the entire package of regulations, the matter under consideration here was not substantively changed, nor did Plaintiff lack notice of USDE's clock hour policy prior to the regulation's effective date.  As a result, to the extent that Plaintiff chose to calculate Pell Grant awards contrary to this regulation at the beginning of its 1993-94 award year, it did so with a knowing disregard for the consequences.

    Moreover, even assuming there was an issue of the USDE retroactively enforcing its clock hour regulation for a brief period of time, in this case it would have been appropriate.

    The First Circuit Court of Appeals has evaluated the propriety of the retroactive application of an agency policy by determining whether it would result in a "manifest injustice".  The Court has stated, while upholding various retroactive applications, "[u]nder the manifest injustice standard the disappointment of private expectations that results from the implementation of a new rule must be balanced against public interest in enforcement of that rule." New England Power Co. v. United States, 693 F.2d 239, 245 (1st Cir. 1982).  See also Adams Nursing Home of Williamstown, Inc. v. Matthews, 548 F.2d 1077, 1080 (1st Cir. 1977); Dedham Water Co. v. Cumberland Farms Dairy, Inc., 805 F.2d 1074 (1st Cir. 1986).  Here,

---

    [3] Within this preamble, the Secretary also referred to practices inconsistent with the regulation as conflicting with "the Secretary's long-standing interpretation under the current definition of the term "clock hour."  Id.

the balance weighs decidedly in favor of USDE; the Secretary has a strong incentive in seeing a policy enforced that was adopted to insure integrity in the administration of the Pell Grant program while Plaintiff's expectations are to receive excess Pell Grant receipts.

It is not the province of this Court to evaluate the wisdom of a particular agency policy, but rather to determine whether it has been enforced consistent with the law. Based on a review of the entire administrative record, it is apparent that USDE enforced its rules for Pell Grant calculations in accordance with the law, and that Plaintiff received the benefit of USDE's administrative process to challenge this enforcement. Thus, the USDE's actions were not arbitrary and capricious, and USDE is entitled to summary judgment on this matter.

### THE EXCESS CASH FINDING

When an institution participates in the Title IV, Higher Education Act (HEA) programs, the institution acts in the nature of a fiduciary and is subject to the highest standard of care and diligence in administering these programs and accounting to USDE for the funds it receives. 34 C.F.R. §8668.82(a), (b) (1991-94). Within the context of the student financial assistance programs, all Title IV funds are held in trust for the intended student beneficiaries and USDE. Accordingly, a school that receives these federal funds must either credit them to student accounts, or return them to the USDE within a three-day period. <u>See</u> 31 C.F.R. Part 205 (1992);

CIVIL NO. 98-2225 (RLA)                                    **Page 16**

Recipient's Guide for the Department of Education Payment Management System (1993).  A.R. at 174-182.  Plaintiff does not contest the existence of this three-day requirement.

USDE, however, found that Plaintiff routinely violated the three-day requirement over a three-year period, consistently requesting and receiving Pell Grant funds in excess of the amount it would credit to student accounts.  At the end of the three-year period, USDE found that Plaintiff held $542,947 in excess funds.  In addition, USDE charged Plaintiff $213,917 in interest for the funds it improperly retained throughout these three years.

Plaintiff challenged this finding by suggesting that USDE should have evaluated its compliance with the three-day requirement by examining different records than it did.  (Plaintiff's Fifth Cause of Action; Complaint at ¶¶84-86.)  It also suggested that there may have been another way to calculate the interest that it owes. (Plaintiff's Fifth Cause of Action; Complaint at ¶87.)  However, Plaintiff offered nothing to show that USDE's action was arbitrary and capricious.

The administrative record identifies with particularity the manner in which USDE rendered its assessment.  See generally A.R. at 1278-1330.  Both the hearing official, see A.R. 1769-1770, and the Secretary, see A.R. at 1878, explained the evidence they reviewed and discussed the conclusions that they reached.

The fact that there may have been alternative ways to evaluate the evidence before the agency does not detract from the conclusions

the agency rendered, nor does it suggest that the agency's decision was arbitrary and capricious.  Rather, deference is owed to the agency's factual determination.  As the First Circuit Court of Appeals has noted, "A reviewing court will not disturb ... findings so long as the (hearing official's) position represents a choice between two fairly conflicting views, even if the Court would have made a different choice had the matter come before it de novo."  3-E Co., Inc. v. N.L.R.B., 26 F.3d 1, 3 (1st Cir. 1994); see also Adams v. U.S. E.P.A., 38 F.3d 43, 49 (1st Cir. 1994).  Given the existence of ample evidence to support its conclusion, USDE is entitled to summary judgment on this issue.

## THE REFUND FINDING

If a student withdraws before completing a certain amount of his or her educational program, the school must return unearned portions of the student's tuition.  For purposes of the Pell Grant program, an institution is required to return any monies owed on behalf of a student to the USDE if the student officially withdraws, drops out, or is expelled on or after the first day of class of a payment period.  34 C.F.R. §668.22(a)(1) (1992-1995).  During the relevant time period here, these refunds payments were due within 30 days of the student's withdrawal.  34 C.F.R. §§668.22(e)(5) (1992-93); 668.22(j)(4)(1994-95).

As explained within the administrative record, USDE permitted a school to pay Pell Grant refunds by one of two ways: either by directly sending a check to USDE for the amount of the refund due, or

CIVIL NO. 98-2225 (RLA)                                          **Page 18**

by drawing down less Pell Grant money for otherwise eligible new students while annotating specific student accounts to which the refunded money was credited.  See, e.g., A.R. at 1440; 1756.

USDE assessed $715,456 for this violation consisting of $655,554 in unpaid refunds during 1994-95; $28,561 in interest on those unpaid refunds; and $31,341 in interest for refunds that Plaintiff paid late in previous years.  Plaintiff did not challenge the assessment for the late paid refunds.

Once again, the administrative record identifies with particularity the manner in which USDE rendered its assessment.  See generally A.R. at 1418-1434.  Both the hearing official, see A.R. 1774, and the Secretary, see A.R. at 1878-79, explained the evidence they reviewed and discussed the conclusions that they reached.  Nonetheless, Plaintiff challenged this finding on two bases.

First, Plaintiff claimed that it provided evidence of more than $1 million in refund payments that USDE did not properly consider. (Plaintiff's Sixth Cause of Action; Complaint at ¶¶90-91.)  However, to the contrary, the administrative record demonstrates that both the hearing official and the Secretary did consider this evidence, and rejected it, and provided an explanation for their decisions.  See A.R. at 1774; 1878-89.  Again, as explained previously, the careful consideration of competing evidence and an agency's adoption of one permissible reading of that evidence will not be disturbed upon judicial review.  3-E Co., Inc., supra, 26 F.3d at 3.

Subsequently, Plaintiff filed additional new evidence with this Court in an attempt to show compliance with USDE's refund requirements. See docket Nos. 56, 57. This attempt to create a new record on appeal is rejected. As previously discussed, it is well established in APA cases that, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." Camp v. Pitts, 411 U.S. 138, 142 (1973); see also Florida Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985). Plaintiff acknowledged this expected standard of review but argued that this Court can go beyond it if there is "a strong showing of bad faith or improper behavior", Town of Norfolk, supra, 968 F.2d at 1458, or if the agency deliberately excluded pertinent materials located within its files in an effort to manipulate its case on record review. Environmental Defense Fund v. Blum, 458 F. Supp 650 (D.D.C. 1978). However, the record before the Court shows no evidence of bad faith, improper conduct, or manipulation by USDE that would permit the Court to reopen the established agency record. As a result, the Court declines to do so.[4]

---

[4] It is beyond dispute that Plaintiff had ample opportunities during the many aspects of the lengthy administrative process to offer the evidence from its own files that it subsequently decided to produce before this Court. For whatever reason, Plaintiff apparently believed that the evidence it offered during the administrative proceeding was either more persuasive or was independently compelling. Such a tactical decision does not justify permitting supplementation of the record now. Moreover, the Court's review of the documents offered herein shows that even if they were considered, on their face, they do not respond to the specific failings identified within the administrative process for the agency's conclusions.

Second, Plaintiff claimed that it was improperly assigned the burden of proof to contest the refund finding. (Plaintiff's Third Cause of Action; Complaint at ¶¶56-60.)  This argument is also without merit.  This case consisted of several consolidated agency actions with the burden of proof residing at different times with different parties.  Compare 34 C.F.R. §668.88(c)(2); 34 C.F.R. §668.116(d) (1996-98).  However, after USDE satisfied its burden to establish Plaintiff's nonpayment of refunds, Plaintiff necessarily assumed the burden to support its defense that it actually did pay the refunds contrary to USDE's evidence.  As both the hearing official, and the Secretary found, Plaintiff failed to do so.  See A.R. at 1774; 1878-79.

As a result, the USDE's Motion for Summary Judgment is likewise granted as to this issue.

**THE FINE**

Plaintiff offered no specific challenge within its Complaint to the fine USDE imposed.  Accordingly, Plaintiff's argument that the fine is arbitrary and capricious is purely derivative of its arguments above, and USDE is likewise entitled to summary judgment. In its Motion for Summary Judgment, Plaintiff argued that the fine is disproportionate because "it goes beyond what is prescribed and mandated by statute." (Docket No. 57 at 31-32.)  This statement is without merit.

---

Thus, they could not support a finding that USDE's decision was arbitrary and capricious.

**CIVIL NO. 98-2225 (RLA)**                                              **Page 21**

The statute authorizes a potential fine of $25,000 per violation. 20 U.S.C. §1094(c)(3)(B)(i). The agency action sustained fines of $25,000 for each of the three years that the school paid refunds late or not at all, for a total of $75,000, and $25,000 for each of the three years that the school retained excess cash, for a total of $75,000. Thus, the total fine is **$150,000**. The Secretary additionally could have fined the school for its improper Pell Grant calculations, but chose not to do so. These actions are consistent with the governing statute; they do not violate it. USDE is required to do nothing more.

### CONCLUSION

For the reasons set forth above, the USDE's Motion for Summary Judgment (**docket No. 35**) is hereby **GRANTED** and Plaintiff's Motion for Summary Judgment (**docket No. 57**) is **DENIED**.

IT IS SO ORDERED.

San Juan, Puerto Rico, this 26th day of October, 2004.

                                    S/Raymond L. Acosta
                                    RAYMOND L. ACOSTA
                                    United States District Judge