IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

INSTITUTO DE EDUCACION UNIVERSAL

V.

                                                98-2225 (RLA)

U.S. DEPARTMENT OF EDUCATION

**INJUNCTIVE RELIEF PETITION**



To the Honorable Court (HC):

    Comes now the Plaintiffs', Angel Ruiz Rivera (ARR), appearing here on his own right (Pro Se); In Forma Pauperis (IFP), and in representation of IEU,[1] the defunct since 1998 legal fiction and respectfully states, alleges and prays as follows:

**I. Introduction**

    1. Recently, on October 26, 2004, this HC issued a summary judgment order and opinion in the above referenced case after having been filed more than six (6) years ago.

    2. Most recently, the appearing counsel for the Plaintiffs's has moved to resign due primarily to the Plaintiffs's' incapacity to pay the legal firm the tens of thousands of dollars in honoraria owed, due to our IFP economic status.

---

[1] Pursuant to the authority of the previous cases where ARR has temporarily represented IEU while he retains counsel for the defunct legal fiction. See 99-1328 and 99-1628. According to the rationale of the First Circuit in allowing my representation temporarily by way of exception, this appearance of an officer in representation of an entity is accepted in circumstances such as this where there is too short time to file a motion for reconsideration under Federal Rule of Civil Procedure 59, (10 days) and this coincides with the resignation of the pre-existing legal representation.

1

3. Since this HC and the Honorable U.S. Court of Appeals for the First Circuit (HUSCA1C) have before informed this litigant that he cannot represent IEU, except temporarily by way of exception in circumstances such as this, I am respectfully filing this Injunctive Relief Petition, since same is needed so that IEU may exert its right to appear by counsel of its choice. As this HC knows better than I do, if IEU cannot continue to pursue its causes of action here, not only the rights of 5,000 students and 500 employees will be devastated but idem will happen to my rights personally. As this HC also knows, as President-Founder, fiduciary agent and person responsible for IEU, regardless of the fact that the corporation has been defunct and legally non-existent since August 1998, all the collections efforts by the U.S. Department of Education (USDE) (Exhibit 1) and the Internal Revenue Service (IRS) and the U.S. Department of the Treasury (USDT) (Exhibit 2) regarding this and ancillary litigation are addressed and directed to yours truly. Since the IRS have made me the person responsible for IEU's owed FICA and FUTA taxes, I am permanently civilly and criminally exposed to the legal liabilities and punishment that may be imputed or imposed by this system of "Justice" against the now extinct corporation. For this reason alone, without more, this HC has enough fundament to grant this petition. For all the reasons that will emerge from the rest of this Petition, this HC will have more than enough fundaments to grant this petition.

**II. Injunctive Relief Petition**

In order to be able to establish the facts that justify the granting of this injunction, we must make reference to the summary judgment recently issued. Please bear with us. We will first address the "Facts", as per this HC's opinion, making reference to the specific number used by this HC, but in the order of relevance and pertinence to our arguments.

1) The HC ruled that it was an uncontested fact that:

> 20) " **On March 12, 1996**, USDE notified Plaintiff of its intent to **terminate** the school's eligibility to participate in the Title IV programs and to fine it $275,000 for the programmatic violations identified in the program review and audit."
> 21) "Plaintiff appealed the termination and fine actions on **April 1, 1996**."

The Plaintiffs's do not object this determination of fact since it is correct. What the Plaintiffs' do object is what the HC perhaps inadvertently omitted about this fact, which is what is significant so that the facts are put in proper perspective. To start, **the HC fails to recognize the also undisputed fact that the Plaintiffs' appeal was timely filed**. This undisputed fact is pertinent and relevant for reasons that will become clear below. Very respectfully, the above undisputed fact must be evaluated together with the following undisputed facts:



> 13) "On June 28, 1996, SFAP issued a Final Audit Determination (FAD) based on the OIG final audit report covering the 1991-92, 1992-93, and 1993-94 award years."
> 15) "Plaintiff appealed the FAD on **August 12, 1996**".

**Again, the HC fails to recognize that this appeal was timely filed.**

> 18) "On **June 3, 1996**, SFAP issued a Final Program Review Determination (FPRD) that assessed liabilities for the refund finding in the amount of $720,386, to include $655,554 for Plaintiff's failure to make 512 refunds during 1994-95."
> 19) "On **July 17, 1996**, Plaintiff appealed the FPRD."

**Again, the HC fails to recognize that this appeal was timely filed.**

> (22) "The USDE's hearing official consolidated all three administrative actions involving Plaintiff."
> (23) "An administrative hearing was held in San Juan, Puerto Rico, in **October 1996.**"
> (24) "The hearing official issued his decision on **January 24, 1997.**"
> (25) " The hearing official affirmed the excess cash finding and the refund finding and assessed the associated liabilities. **He reversed the clock hour finding in part**, and reduced the amount of the time to $150,000. The hearing official terminated Plaintiff's Title IV eligibility.
> 26) "**Both parties appealed** the hearing official's decision to the Secretary."
> 27) " In the final agency action, issued on **October 28, 1997**, the Secretary affirmed the hearing official's excess cash and refund findings, but reversed the hearing official's

3

clock-hour finding. Reinstating the full liabilities. The Secretary sustained the amount of the fine, **but reversed Plaintiff's Title IV eligibility termination."**

28) "The Office of Student Financial Assistance (SFAP) filed a motion for reconsideration that was denied on **January 9, 1998.**"

The pertinence and relevance of all the above undisputed facts are the following:

1) The HC does not explains nor could it, simply because the USDE did not, how could the USDE had initiated on **March 12, 1996**, a termination action against IEU, when at this juncture, its administrative actions were obviously not final since the FAD and the FPRD had not even been issued (**June 28, 1996 and June 3, 1996**). Actually, IEU and ARR did not even know what were the final "findings" and liabilities imputed when the USDE had already initiated their termination upon which all their money was preconfiscated. Evidently this is a blatant violation of IEU's constitutional procedural due process guarantees under the Fifth Amendment, the statutory provisions of the Administrative Procedures Act (APA) (5 U.S.C.) and the regulatory provisions under 34 Code of Federal Regulations (C.F.R.-Education). When the FAD and FPRD were finally issued, they were both timely appealed as we have seen. Thus, they never became final. Notwithstanding this, extremely punitive and pre-confiscatory actions were taken against IEU, even before its FAD and FPRD were final, and before IEU had availed itself of its constitutional, statutory and regulatory rights to respond, have a due process hearing and request this judicial review through appeal.

2) This blatant violation of the Plaintiffs' constitutional procedural due process guarantees, statutory and regulatory provisions is more than significant due to the undisputed fact that **the Secretary in his final agency decision, on October 28, 1997, revoked his hearing official's decision to terminate the Plaintiffs' eligibility.**

4

3) This undisputed fact is even more significant when you consider that the **Secretary affirmed on January 9, 1998, the final agency decision not to terminate Plaintiffs' eligibility** even when its own Office of the Inspector General (OIG) and Office of the General Counsel (OGC) Chief Counsels, both, joined in a Motion for Reconsideration, to no avail.

4) The problem with the above, is how can this HC or any for this matter, justify the obviously unripe and consequently unconstitutional and pre-confiscatory termination action of the Plaintiffs' eligibility by the Defendant's as of March 12, 1996, when: 1) Not even the FAD nor the FPRD had been issued; 2) the Plaintiffs' timely responded and appealed both, consequently impeding that they became final; 3) the Administrative Law Judge (ALJ) eventually ruled against the USDE in terms of the FAD "clock-hour finding", the one with the highest monetary liability imputed; 4) even when the Secretary reinstated it, he revoked that same "termination" (See October 28, 1997, Secretary's Decision at p.8, affirmed on January 9, 1998, Final Decision); and, 5) even when its OIG and OGC Chief Counsels moved for reconsideration, the agency's highest authority, the Secretary, affirmed that the unripe termination was definitely and ultimately "*unwarranted for lack of evidence of intentional wrongdoing*".

5) The above undisputed facts are pertinent and relevant because they serve to prove without any doubt, that the actions taken by the Defendant against the Plaintiffs' were not only premature and consequently unripe, but that eventually they never prevailed in terms of the most significant issue at stake here which was undoubtedly termination. The pertinence and relevance of the above undisputed facts, omitted altogether by this HC in its opinion, is that the USDE also prematurely initiated punitive and pre-confiscatory actions against the Plaintiffs', relying on the above "termination" which eventually never became final, much less was it at March 12, 1996,

5

when it was initiated, a time when the FAD and the FPRD had not even been issued. The above mentioned punitive and preconfiscatory actions occurred when the USDE: 1) predeprivated IEU of its flow of funds when unilaterally and in breach of the contract it had with IEU, switched it to the reimbursement method of payment, also without any due process and subsequently took additional retaliatory measures against IEU when: 2) it predeprivated and preconfiscated the Plaintiffs' of all the funds owed to them through the reimbursement requests that had been systematically and deliberately delayed in disbursing to start with, by effectuating an illegal and confiscatory taking of property through a clearly unripe Notice of Offset on February 7, 1997 [after IEU had filed an Injunctive Relief Petition and Complaint against the USDE on July 23, 1996 at this same court, 96-1893 (JAF)]. See Notice of Offset at p. 2 where it affirms that the extreme measure was taken based on the "termination" decision of the ALJ. [2] (Exhibit 4). "Termination" that we all know that eventually never came into being since it was overruled by the Secretary.

6) This undisputed fact is significant because in addition to the obvious, that the USDE did not have a legal right to pre-confiscate more than $2.263 million dollars owed to IEU students, faculty and employees, (and still owes, since the USDE still does not have a final decision as of yet), by asphyxiating economically IEU totally, it left IEU without even the

---

[2] On February 7, 1997, without its ALJ decision being final, the USDE preconfiscated over $2.263 million dollars that it owed IEU for reimbursement requests that it had deliberately delayed in disbursing as part of its heinous and callous efforts to provoke the economic asphyxiation of the Plaintiffs.

The pretexts used by the USDE to "justify" this clearly unconstitutional taking of property without due process, were: 1) the "findings" against IEU in the OIG audit and the Program Review that IEU and ARR suffered and 2) the "termination" of IEU's eligibility by the ALJ.

6

possibility of being able to retain and pay counsel to defend itself from all these clearly unripe unconstitutional and illegal actions since it left it totally devoid of economic resources. This is one of the reasons why IEU has been obliged to appear through its President, Pro Se, in various stages of this litigation since the onset, starting at the administrative hearings level.

7) Actually, because as we all know, the decision of this court is still not final, and we intend to appeal it if this injunctive relief petition is not granted, we are respectfully requesting from this HC to order from the USDE the immediate release of all the pre-confiscated funds so that IEU can have economic resources to avail itself of its right to representation by counsel of its choice, a right that was preconfiscated from it by the USDE by the taking of all its property without evidently complying with basic due process. We request that from these funds, the debt owed to the previous lawyers that have represented IEU in this litigation are paid, just as the present and future ones, until this judicial review process is final and over, including any future counsel that this HC may choose to appoint for IEU due to its insolvency and the determination of this HC that its President, Angel Ruiz Rivera (ARR) cannot represent it Pro Se. This, in case my appearance for IEU is not accepted or if I die for whatever reasons. In the alternative, we pray that this HC appoints a judicial administrator of these funds who would pay the legal honoraria, fees and costs and any other incidental cost of the rest of this litigation including appeal and any other expenditure that this HC may in time approve.

8) Very respectfully, we are also requesting that this HC orders the USDE to comply with the Notice of Levy of June 17, 1998, timely filed by the Internal Revenue Service (IRS) of the U.S. Department of the Treasury (USDT) against the USDE funds owed to IEU (Exhibit 5), since this credit of the IRS has preference in rank and in time over any credit that the USDE may

7

**Certificate of Service**

I, Angel Ruiz Rivera, appearing for the Plaintiffs', Pro Se and IFP, hereby certify that a copy of this petition was served through mail to the appearing counsel for the Defendant, Isabel Munoz Acosta, Esq., U.S. Attorney's Office for the District of Puerto Rico, Civil Division, Plaza Chardon Suite 1201, 350 Chardon Ave. Hato Rey, P.R. 00918.