IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA

IN RE: ANGEL RUIZ RIVERA

PETITIONER

UNITED STATES
DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
COMMISSIONER MARK W. EVERSON

RESPONDENT

## MANDAMUS PETITION

To The Honorable Court (HC):

Comes now the Petitioner, appearing here Pro Se (PS) and In Forma Pauperis (IFP), and respectfully states, alleges and prays as follows:

This Petition is being respectfully filed pursuant to the authority of Federal Rule of Appellate Procedure (FRAP) and Local Rule 21 of this HC, the Internal Revenue Service (IRS) Code, sections 6321 et seq., and the Local Rule 330 of the Tax Court.[1]

1. Angel Ruiz Rivera (ARR), the Petitioner, was (is?) President-Founder of Instituto de Educacion Universal (IEU) [Employer Identification Number (EIN) 66-038-4887]. IEU was founded in 1981, duly registered as a corporation under the laws of Puerto Rico as a private non-profit vocational technical educational institution. It was granted recognition of exemption by the Internal Revenue Service (IRS) in 1983, as such, pursuant to section 501 (c)(3) of the IRS Code.

---

[1] In case that, because of our functional illiteracy in legal matters, we may be filing at the wrong forum again, in such probable- under- the- circumstances- eventuality, we pray that this Petition is transferred to the Tax Court or the appropriate forum, whichever that may be.

1

2. Petitioner was the signatory of the Program Participation Agreement (PPA) between IEU and the U.S. Department of Education (USDE) in 1984 and its subsequent renewals, for the administration of federal funds under the Higher Education Act (HEA) of 1965 as amended, known as the Student Financial Assistance Programs (SFAP). As such, he was determined by the USDE to be IEU's fiduciary agent. In 1984 IEU became accredited by the National Association of Trade and Technical Schools (NATTS), a USDE's recognized accrediting agency. In 1991, it became also a higher education institution and as such it was recognized and certified by the USDE. In 1992 it became eligible for Title III of the HEA and was a grant awardee of the Strengthening Developing Institutions program. IEU always fully complied with all its single audits and compliance audits with the USDE by independent Certified Public Accountants (C.P.A.'s), always obtaining unqualified or "clean opinions" in its audited financial statements. Starting in late 1994 and continuing ever since, IEU and Petitioners became the victims of violations to their civil, constitutional and human rights due to the vicious, heinous, discriminatory and ultra vires actions of federal officers that are object of other litigation not pertinent here and now. As a result, the USDE forced Petitioner to discontinue IEU operations in June 1997. Since August 1998, IEU, was decertified as a corporation by the Commonwealth of Puerto Rico Department of State.

3. ARR was determined to be the "responsible person" of IEU's, FICA taxes under section 6672 of the IRS Code, (See Slodov v. United States, 436 U.S. 238), since "trust funds" liabilities were imputed against him personally, for IEU's unpaid taxes for the quarters of October- December 1995; January 1996-March 1996 and April-June 1996. See United States v. Energy Resources, Inc. 495 U.S. 545 and Begier v. IRS, 496 U.S. 53.

2

4. As we have learned from the reading of the applicable and controlling jurisprudence, the liability under section 6672 is "nondischargeable in bankruptcy". [See United States v. Sotelo, 436 U.S. 268. McKowen v. Internal Revenue Service, 370 U.S. 1023 (1$^{st.cir}$. 6/1/2004)]. This *fait accompli* obligatorily and necessarily entails that my "entire future earnings could be confiscated to compensate for the corporate liability" [2] This means that according to the *stare decisis* of the Court regarding this issue, I, **and** my successors shall remain hypothecated to the IRS *ad perpetuam*. Because of this, Petitioner clearly has standing to file the instant petition.

5. On June 1998, as part of the efforts by the IRS to collect the tax debt of IEU/ARR, the IRS timely notified a Notice of Levy to the USDE (Exhibit 1) to seize some of the funds that the USDE owed IEU. See sections 6321, 6322, 6331(a), and 6332 (a) of the IRS Code. See also United States v. National Bank of Commerce, 472 U.S. 713. To this date, the IRS has been derelict in its duties by failing to enforce said levy and oblige the USDE to comply with the law.[3]

---

[2] A quotation from the Seventh Circuit Court of Appeals used in support of their decision in the Sotelo case, supra, which was incidentally reversed and remanded by the Court.

[3] "A federal tax lien, however, is not self-executing. Affirmative action by the IRS is required to enforce collection of the unpaid taxes. The Internal Revenue Code provides two principal tools for that purpose. The first is the lien-foreclosure suit. Section 7403(a) authorizes the institution of a civil action in federal district court to enforce a lien "to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax." Section 7403(b) provides: "All persons having liens upon or claiming any interest in the property involved in such action shall be made parties thereto." The suit is a plenary action in which the court "shall . . . adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property." 7403(c). See generally United States v. Rodgers, 461 U.S. 677, 680 -682 (1983). The second tool is the collection of the unpaid tax by administrative levy. **The levy is a provisional remedy and typically "does not require any judicial intervention."** Id., at 682. The governing statute is 6331(a). See n. 1, supra. It authorizes collection of the tax by levy which, by 6331(b), **"includes the power of distraint and seizure by any means.""** United States v. National Bank of Commerce, 472 U.S. 713,720.

3

6. On July 23, 1996, Petitioner filed for IEU, himself and others, a Declaratory Judgment and Injunctive Relief Petition against the USDE in addition to a Bivens Complaint against various of its officers [96-1893 (JAF)]. While this case was *sub judice and pendente lite*, an Administrative Law Judge (ALJ) of the USDE ruled that IEU supposedly deserved termination of its eligibility to administer the SFAP, although inconsistently, since simultaneously he also ruled the issue with the highest liability imputed, in favor of IEU. See In The Matter Of Instituto de Educacion Universal, 96-28-ST; 96-93-SP; 96-103-SA, of January 24, 1997.

7. Just a couple of weeks after, on February 6, 1997, even before the parties could even respond to the ALJ ruling, and well before the USDE had a final court order to legally justify it, since the period provided for in the "regulation of limitations" had not expired, the USDE ventured, through an unripe and improvident Notice of Offset (Exhibit 2), an unconstitutional preconfiscation and illegal seizure of over $2.263 million dollars that it had deliberately, wantonly and callously delayed in disbursing IEU corresponding to reimbursement requests timely and properly submitted prior to that date. (Exhibit 3). This action evidently was in retaliation for IEU and Petitioner having had exerted their first amendment rights against the USDE. This is the only possible explanation since the USDE illegally and ultra vires failed to:

> 1) accept a performance bond that the Higher Education Act (HEA) expressly provided for as an acceptable mean to offer the USDE financial surety in scenarios such as this [section 498(c)(3)];
>
> 2) accept the customary payment plan that the regulations specifically provided for through which the institution although objecting to the ALJ decision could pay the liabilities in installments although under protest while the appeal process culminated; and
>
> 3) accept to credit IEU for the corresponding amount of the highest liability (that of the clock hour issue) which the ALJ had decided in IEU's favor ($1,284,900).

4

8. That preconfiscation and illegal seizure besides having being implemented in overt violation of the Fourth Amendment protections, also violated Fifth Amendment due process guarantees since the ALJ decision was timely appealed by both parties and consequently, never became final as to be legally supported or justified. See United States v. James Daniel Good Real Property Et al., 114 S. Ct. 492. [4] The USDE did not have any legal right to accelerate that "debt".

---

[4] " The Fourth Amendment does place restrictions on seizures conducted for purposes of civil forfeiture, One 1958 Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 696 (1965) (holding that the exclusionary rule applies to civil forfeiture), but it does not follow that the Fourth Amendment is the sole constitutional provision in question when the Government seizes property subject to forfeiture.

We have rejected the view that the applicability of one constitutional amendment preempts the guarantees of another. As explained in Soldal v. Cook County, 506 U.S. __, __ (1992) (slip op., at 14):

> "Certain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands. Where such multiple violations are alleged, we are not in the habit of identifying, as a preliminary matter, the claim's "dominant" character. Rather, we examine each constitutional provision in turn."

**Here, as in Soldal, the seizure of property implicates two "'explicit textual source[s] of constitutional protection,'" the Fourth Amendment and the Fifth. Ibid. The proper question is not which Amendment controls but whether either Amendment is violated...."**

Neither Gerstein nor Graham, however, provides support for the proposition that the Fourth Amendment is the beginning and end of the constitutional inquiry whenever a seizure occurs. That proposition is inconsistent with the approach we took in Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663 (1974), which examined the constitutionality of ex parte seizures of forfeitable property under general principles of due process, rather than the Fourth Amendment. And it is at odds with our reliance on the Due Process Clause to analyze prejudgment seizure and sequestration of personal property. See, e. g., Fuentes v. Shevin, 407 U.S. 67 (1972); Mitchell v. W. T. Grant Co., 416 U.S. 600 (1974).

**It is true, of course, that the Fourth Amendment applies to searches and seizures in the civil context, and may serve to resolve the legality of these governmental actions without reference to other constitutional provisions.** See Camara v. Municipal Court of San Francisco, 387 U.S. 523 (1967) (holding that a warrant based on probable cause is required for administrative search of residences for safety inspections)...

Though the Fourth Amendment places limits on the [ UNITED STATES v. JAMES DANIEL GOOD

To add insult to injury, the Secretary overruled the ALJ decision as to the "termination" on which the preconfiscation and illegal seizure was allegedly based according to the letter notifying the Notice of Offset. See Secretary's decision of October 28, 1997, affirmed on January 9, 1998, amidst motions for reconsideration filed by all parties, most noticeable the Chief Legal Counsels of the Office of the Inspector General (OIG) and the Office of the General Counsel (OGC).

9. Once the final agency decision was affirmed by the Secretary, Petitioner moved on his own behoof and that of IEU to timely file for their statutory right to a judicial review under the Administrative Procedures Act (5 U.S.C.) provisions. The case was filed initially at the U.S. Court of Appeals for the First Circuit (USCA1C) (98-1242), which transferred it to the U.S. District Court for the District of Puerto Rico (USDCDPR) [(98-2225(RLA)], after determining it was not the most appropriate venue. There, it was denied, and Petitioner appealed it to the USCA1C (99-1628). There, it was vacated and remanded. Recently, on October 26, 2004, after more than four years and a half years dormant and six years and a half after having being filed, it has been ruled against IEU, even when never a hearing has been held-neither the first time, nor the second time. Nevertheless, Petitioner has filed an Injunctive Relief Petition with a prayer for stay of judgment that is *sub judice*. (Exhibit 4). In it, we are timely moving to request that court which already has jurisdiction over the USDE to compel it to comply with the Notice of Levy.

---

REAL PROPERTY, ___ U.S. ___ (1993), 8] Government's power to seize property for purposes of forfeiture, it does not provide the sole measure of constitutional protection that must be afforded property owners in forfeiture proceedings. So even assuming that the Fourth Amendment were satisfied in this case, it remains for us to determine whether the seizure complied with our well settled jurisprudence under the Due Process Clause.

6

In view of the above, it is clear that the USDE still as of this date has yet to have a final legal judgment on which to justify the unconstitutional preconfiscation and illegal seizure or forfeiture of February 6, 1997. [5] This preconfiscation and illegal seizure was tantamount to a forfeiture that not even the IRS could had legally performed under the circumstances. See United States v. Parcel of Rumson, N.J. Land, 507 U.S. 111,126. [6]

Evidently and obviously then, in view of all the undisputable and irrefutable facts above, it is crystal clear that there are no reasons in law nor in logic for the IRS not to enforce its timely Notice of Levy against the funds that the USDE owed to IEU. The USDE still as of this date does not have a legal judgment nor a right on which to base this taking of property without the due process having been consummated. But even if it had, *arguendo*, it would be second to the IRS Notice of Levy.

Even if the USDE were to eventually prevail in all its claims against IEU, which is improbable, as history and fate shall prove, still in this hypothetical scenario, its eventual credit could not possibly prioritize that of the IRS, due to the millenary maxim, first in time, first in right. See United States v. McDermott, 507 U.S. 448, 449-455.

---

[5] "The courts uniformly have held that a bank served with an IRS notice of levy "has only two defenses for a failure to comply [472 U.S. 713, 722] with the demand." United States v. Sterling National Bank & Trust Co. of New York, 494 F.2d 919, 921 (CA2 1974), and cases cited. One defense is that the bank, in the words of 6332(a), is neither "in possession of" nor "obligated with respect to" property or rights to property belonging to the delinquent taxpayer. The other defense, again with reference to 6332(a), is that the taxpayer's property is "subject to a prior judicial attachment or execution." 494 F.2d, at 921. Accord, Bank of Nevada v. United States, 251 F.2d 820, 824 (CA9 1957), cert. denied, 356 U.S. 938 (1958)." National Bank of Commerce, supra.

[6] Also see United States v. U.S. Currency, $81,000.00, Etc., 189 F.3d 28 (1st.Cir.8/19/1999).

7

For all the above stated reasons, I respectfully pray that this HC grants this Mandamus Petition and:

1. Order the Commissioner of the IRS to enforce its timely filed Notice of Levy, of June 17, 1998, against the IEU funds owed by the USDE, which have remained in the USDE's illegal possession since the unconstitutional preconfiscation and illegal seizure. [7]

2. Order that the interests and penalties accrued **before** the Notice of Levy was timely filed, together with the trust fund liabilities imposed, be held separately by this HC, until the

---

[7] " Section 6331(a) of the Internal Revenue Code of 1954, as amended, 26 U.S.C. 6331(a), provides that the Government may collect taxes of a delinquent taxpayer "by levy [472 U.S. 713, 715] upon all property and rights to property . . . belonging to such person." 1 Section 6332(a) of the Code, 26 U.S.C. 6332(a), then provides that "any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary, surrender such property or rights . . . to the Secretary." ...

...."The final judgment in [a levy] action settles no rights in the property subject to seizure." United States v. New England Merchants National Bank, 465 F. Supp. 83, 87 (Mass. 1979). Other claimants, if they have rights, may assert them. Congress recognized this when the Code's summary-collection procedures were enacted, S. Rep. No. 1708, 89th Cong., 2d Sess., 29 (1966), and when it provided in 7426 of the Code, 26 U.S.C. 7426, **that one claiming an interest in property seized for another's taxes may bring a civil action against the United States to have the property or the proceeds of its sale returned.** 11 Congress also has provided, by 6343(b), an effective and inexpensive administrative remedy for the return of the property. See [472 U.S. 713, 729] Treas. Reg. 301.6343-1(b)(2), 26 CFR 301.6343-1(b)(2) (1984). "

**Congress thus balanced the interest of the Government in the speedy collection of taxes against the interests of any claimants to the property, and reconciled those interests by permitting the IRS to levy on the assets at once, leaving ownership disputes to be resolved in a postseizure administrative or judicial proceeding.** See United Sand & Gravel Contractors, Inc. v. United States, 624 F.2d 733, 739 (CA5 1980); Valley Finance, Inc. v. United States, 203 U.S. App. D.C. 128, 136-137, 629 F.2d 162, 170-171 (1980), cert. denied sub nom. Pacific Development, Inc. v. United States, 451 U.S. 1018 (1981)...." National Bank of Commerce, supra.

appeal of the final agency decision becomes legally final and it is determined if the lack of payment of the taxes owed is attributable to IEU and the Petitioner as the responsible person. Or, on the other hand, it is eventually and finally ruled that it was due to the USDE, for its unripe and improvident unconstitutional preconfiscation and illegal seizure without the due process having been consummated.

3. Order that neither IEU nor Petitioner are penalized by the interests accrued **after** the Notice of Levy was timely filed at the USDE, since the delay in payment by the USDE and in collecting by the IRS have been due to the exclusive responsibility of both and not of neither IEU nor the Petitioner.[8]

So we state, allege and pray. Respectfully submitted, today November 10, 2004.

Angel Ruiz Rivera
Pro Se and for IEU IFP
P.O. Box 191209, San Juan, P.R. 00919-1209.
787-714-1069

---

[8] In the situation where a taxpayer's property is held by another, a notice of levy upon the custodian is customarily served pursuant to 6332(a). This notice gives the IRS the right to all property levied upon, United States v. Eiland, 223 F.2d 118, 121 (CA4 1955), and creates a custodial relationship between the person holding the property and the IRS so that the property comes into the constructive possession of the Government. Phelps v. United States, 421 U.S. 330, [472 U.S. 713, 721] 334 (1975). If the custodian honors the levy, he is "discharged from any obligation or liability to the delinquent taxpayer with respect to such property or rights to property arising from such surrender or payment." 6332(d). If, on the other hand, the custodian refuses to honor a levy, he incurs liability to the Government for his refusal. 6332(c)(1). National Bank of Commerce, supra.